Our next case this morning is United States v. Armour. Ms. Jacobs. Good morning, Your Honors. Michelle Jacobs, appearing for the defendant, Deandre Armour. I'd like to start this morning, I mean, I can start wherever you want. Obviously, we've sort of run the waterfront here. But I think there is one issue here that there is an error that is plain that needs correction. And I don't want to lose the opportunity to touch on it before we perhaps get into some of the other Johnson issues. And that is the sentence on count three. That sentence should be vacated and remanded for resentencing consistent with the jury's verdict here. The imposition of a seven-year sentence without a jury finding on the element of brandishing violates the defendant's Sixth Amendment right to a trial by jury and is controlled directly by the Supreme Court's decision in Alain. Alain obviously held that you have to have a jury verdict on a mandatory minimum. There was not a verdict here. It was not submitted. We're under plain error review, right? I'm sorry? We're under plain error review on this issue. We are. So how could a reasonable jury have found, given the photos that we've seen, could they have found Mr. Armour guilty of only carrying and not brandishing? Well, remember that those photos are not Mr. Armour, for starters. And I know that it is an aiding and abetting case. But you have – well, there's a couple of different things. The first is when you look at the jury's verdict itself, they've acquitted Mr. Armour on other conduct of that same co-defendant occurring during the course of the bank robbery, making some distinction, apparently, between what was reasonably foreseeable to Mr. Armour, what he was involved in, what he aided and abetted before they went into the bank. You also have the main facts that the government – But they find him guilty of at least carrying, right? Yes. So why wouldn't it go a step further, the brandishing? Well, the evidence was that he suggested to the co-defendant that he bring the gun and assisted the night before in packing a gun in a bag, wiping a gun down and packing it in a bag. Packing it in a bag, knowing that a co-defendant is carrying it with him to the robbery, dropping him off at the robbery, those kinds of things, those are all carrying – I mean, he would be responsible for carrying. But as the jury instructions indicated, someone who aids and abets the underlying offense – and this is what the jury was told – who aids and abets attempted armed bank robbery, knowing a firearm would be used or carried, does not aid in the commission of a 924C. The defendant must aid in the commission of the use or carrying. He must be involved in those elements. And so – I mean, they didn't include brandishing or how you would aid and abet a brandish versus how you would aid and abet a use or carry at all. The jury got no instruction on it. But if you have to have some involvement in the brandishing – for example, in the Kirkland case, the defendant told the co-defendant who was going to carry the gun into the bank, don't worry, you can shoot because this kind of a gun doesn't leave cartridges behind. I mean, that's some suggestion. That defendant knows that gun is going to be out and perhaps even discharged. Cureton, the other one that the government relies on here, is the defendant himself who's carrying the gun and who's brandishing the gun in the course of the robbery. And this court said it would be impossible for the jury to have found that defendant guilty given the facts and not found him guilty of brandishing. But here you have a defendant that's not anywhere near the bank. In fact, at sentencing, the district court commented this defendant had nothing to do with brandishing. I mean, the court made that comment. And so given those facts, given the aiding and abetting, given the location of the defendant, given the lack of any factual basis that this defendant counseled these guys to pull the guns out immediately, hold these people at gunpoint, there was just a complete absence of those kinds of facts that would support a finding of harmless error. Now, again, I'm not suggesting that if it had been given to the jury, what other facts in the record the jury could have? Maybe. But also the jury would have had to have been properly instructed. Right now the jury was instructed you can find him guilty of use or carry if you find there's evidence of him aiding and abetting that use or carry. But there's absolutely no instruction given to the jury about anything more than that. Right. The correct question is not whether the jury could find the brandishing enhancer on this record, but whether a rational jury could find him guilty on the carrying part and not the brandishing part. And your argument, as I understand it, that the answer to that question is yes. The answer to that question is not it wouldn't be an inconsistent verdict. Absolutely not. Absolutely not. Given his role, again, if the jury instructions are correct, and I would suggest that they are, that he had to have involvement in aiding or abetting the brandish versus aiding or abetting the carry. There is no evidence of that. I mean, there simply is not. Is there evidence that a co-defendant ultimately brandished? Yes. It's in the appendix. You can see that the co-defendant has the gun out. But that's not the question. The question is whether there's evidence in the record that this defendant aided and abetted brandishing. Did he do the kind of things that were alleged in Kirkland? Did he counsel the defendant? Make sure you have that gun out. Get it on the victim immediately so she'll do what you're telling her to do or something like that. There's just no evidence of that. And given that, I guess frustration here, and this is, I'm not sure where this goes, but I'm going to throw it out there anywhere. Anyway, this should have been instructed. The jury should have been given the special verdict, right? And we're now in a position of fighting the uphill battle of plain error. But it's the government's burden. It was the government's burden to prove this. It was not Mr. Armour's burden to ask the judge, make sure I get that seven years and not that five years, right? Make sure that the jury gets to decide whether I get that enhanced sentence. And we're now up against this plain error standard. Were we not, had there been some sort of dealing with this at the district level, probably we wouldn't be here at all. But certainly there is a certain irony that we are stuck on a plain error standard trying to establish miscarriage of justice because he didn't ask for a verdict on a sentencing enhancement. This is post-Elaine. Curit and Kirkland, both, those trials happened prior to Elaine. The error that was made in the district court was for an obvious reason. Nobody thought that Harris was going to be overruled, that mandatory minimums had to be given to the jury. This is an apprenti problem, right? Isn't this an apprenti problem? This is no. Because the maximum sentence remains the same on a 924C. But the mandatory minimum prior to Elaine, Harris said, didn't have to give it to the jury. This happened after Elaine. This error shouldn't have happened. But given all that, I would suggest that Elaine suggests that the appropriate remedy here is for a remand and resentencing consistent with the jury's verdict, and that verdict is on use or carry only. Okay. I guess I'll move to the other sentencing issue, unless, again, the court wants to move to the bank robbery, the 2113A and D. Given the decision in McNeil and some of the other cases, I think that's more of an uphill battle. And so I'd like to spend the remainder of my time on the career offender. And I know you just talked to counsel in the previous argument about the put in fear. A couple of things, I guess, that I would like to add to that. The first is it strikes me as there's a certain redundancy in the Indiana statute. I mean, Indiana has said the put in fear means put in fear of bodily injury. But post-2010 Johnson, what that means in federal court in determining whether something is a violent crime, if we say here that putting someone in fear has as an element, that's what this court would have to find, has as an element the use of violent force, the threat of violent force, the threat of pain or bodily injury. It really seems like that's the first prong of the Indiana statute. The first prong of the Indiana statute says use or threaten the use of force. And so by sort of superimposing this 2010 Johnson physical force requirement on the Indiana statute, it seems to me we do create a redundancy in that statute. The two prongs are being interpreted essentially the same. Well, that's the work of the Indiana courts, though. The interpretation that the Indiana courts place on the fear version of the offense perhaps makes it coterminous with the threatened use of force because it requires that the victim be in fear of bodily injury. I think only if or certainly if we're increasing that threat to the 2010 Johnson level, the threat of violent force, what is it? Meaning only physical force. Threat of violent force requires threat of physical force. Physical force, right, right. Or even pain without bodily injury is enough. Right, right. But I would say that in Lewis, which is the case that this sort of all came out of, it seems to me, a close reading of Lewis, there's a complete collapse between the residual clause and the force clause. There really is not a teasing out of does this satisfy, and certainly because it occurred before 2010, does this satisfy post-2010 Johnson just the force clause? I don't think that we could rely on, as the government has in this case, to say Lewis is sort of the beginning and the end of the question here. The other thing I would at least ask the court, and I know my time is up and I will sit down, but I'm going to ask for one more minute. Maybe I won't come up on rebuttal. But some of this seems to me, in this case, to be a labels problem. We're calling this statute robbery, and again, and Indiana called it that. We're not, but Indiana has called it robbery. If they had put in fear subsection of this statute in the theft statute, let's say, and said you have regular theft and then you have this aggravated theft that if somebody takes something from another person and scares them when they do it, we're going to call that some other form of theft. I think it would be a different conversation. The label of robbery has sort of made it easy to take the 2010 physical force Johnson requirement here and say, well, this satisfies it because we're talking about bodily injury, when in fact, as you've talked about with previous counsel, there really is a much lower standard in Indiana than Johnson, I think, suggests is appropriate when talking about these very enhanced penalties under the federal sentencing scheme. All right. Thank you. Thank you. Mr. McCoskey. Thank you, Your Honor. May it please the Court. I guess I'll address the arguments in the order that Ms. Jacobs did, and I'll go ahead and start with the Eleni issue. There were a couple things that came up in the argument that I want to specifically respond to. First of all, just as a general statement, I would say that the plain error standard has not been met here. There's no miscarriage of justice. I understand that Ms. Jacobs views it differently, rails against the notion that, in a way, as she sees it, it shifts the burden to Mr. Armour to raise an objection. But, of course, in any case in an adversarial system, the plain error standard is what courts have devised. Presumably it's the government's job also to help the district judge get the instructions right. Yes, Your Honor. And on that point, absolutely, if nothing else, just to avoid having to deal with this and argue in this plain error context on appeal, there should have been, I will say that, should have been a specific instruction on brandishing. However, that said, the jury instructions in this case did, maybe confusingly but maybe not, even in the definition of carry, encompass, brandishing. And in the context of what the jury saw in terms of the evidence here, it wasn't just the packing of the gun and the zip ties and masks and so forth in the bag. That is true. That was evidence that was presented to the jury. The jury also heard the testimony of Mr. Hardy, who was one of the gunmen who was in the bank, who testified that his actions and Mr. Rogers, the other gunman's actions, were according to a plan devised by Mr. Armour in which they were to enter the bank, take control of the bank, that is, control the employees as they enter the bank. And that's exactly what happened here. Right. I mean, the record would be sufficient to support a jury finding of brandishing. We just don't have that here. And so the question is whether a jury necessarily would have found brandishing by virtue of having found carrying. And this is different from Curitin where you had a single actor, right? Here you've got multiple actors, and he's on an aiding and abetting theory. Aiding and abetting, but also, Your Honor, conspiracy liability, Pinkerton liability. Those instructions were given by the court. There was no objection to the scope of aiding and abetting or the Pinkerton liability for anything that happened here. It is true that Mr. Armour did not set foot in the bank. He was across the street controlling the action by radio, all according to his plan. So what was the defense theory at trial, as best you recall? There was not the defense did not actually give, did not provide a defense. Of course, it wasn't any obligation on their part to do that. But the suggestion was that Mr. Armour was along for the ride and that he had no direction over what happened. He couldn't understand that what did happen would happen. Right, and he was acquitted of the carjacking. He was acquitted of the carjacking. That's correct, Your Honor. So it would not have been inconsistent for the jury to acquit him of the brandishing element had it been instructed on that. It would not have been inconsistent with the carrying conviction. Your Honor, there was a second 924C that was charged that was in conjunction with the carjacking, as the court knows. That charge was specifically, that was charged as a use or carry and not brandishing. The first, the 924C at issue here was in the indictment charged as use, carry and or brandish. And that was exactly what was also on the verdict form, as the court knows. Use, carry or brandish. So I think that the jury could, in fact, it could be said did find that there was a brandishing here. But there was no instruction given on that. There was not a specific instruction. That is correct, Your Honor. But because of, for the reasons, I would say that Curitin and Kirkland still control here because it's a situation, again, where there was no objection raised at sentencing. There wasn't an objection raised in the context of the instructions. And plain error should foreclose an argument here. I'll go ahead and move to the Indiana robbery discussion. I'm not sure there's much more I can add to what my colleague gave a very detailed description of Indiana robbery. I do think that it does qualify under the force clause. And in response specifically to what Ms. Jacobs said here about this, I guess, sort of a redundancy or a merger of the threat of physical force formulation of Indiana robbery with the put in fear formulation, I think it's certainly up to and is the prerogative of the state of Indiana to define robbery or theft, however it chooses to do so. This is how they've chosen to define it. And I think it's a conceptual matter even. I can certainly imagine a case where somebody comes in and actually physically or actively threatens somebody to give me your property or I will do X. That is easily under the physical threat prong. The put in fear could be something as simple as just coming in and just taking the property, a big hulking defendant, for example. I think that a reasonable victim could objectively be placed in fear by the actions of a defendant in that circumstance and certainly could subjectively be placed in fear. Or it could be somebody coming in more serious on the spectrum but still covered under the force clause. Someone could come in with a gun on their hip, never brandish it, never say anything, again, and take property and put someone in fear. So I think it's not necessarily a redundant element and it's not surplusage that the court should somehow ignore. I think that under either formulation it qualifies as a crime of violence under the force clause. And finally, Your Honor, we've- Let me just interrupt you for a minute. Prior to Johnson, of course, we held that Indiana robbery qualifies as a crime of violence under both the force and residual clause of 4B1.2A1 and 2. Do you think we can just assume that the Indiana robbery statute qualifies as a crime of violence without the residual clause? Can we do that? I think that we can, Your Honor. Because we've briefed this, of course, but I think the fear of bodily injury is something that falls within what we would consider a crime of violence, a forceful crime of violence. It falls within the force clause and we don't need to have the residual clause as sort of a safety net to make that finding, Your Honor. Okay. If there are no further questions, Your Honor, I'll go ahead and rest on my brief. All right. Thank you. Thank you. Mr. Mikoski. Ms. Jacobs, your time has expired, but you can have one minute to rebut if you have anything else to say. The only thing I guess I'd point out is one more time on the instructions. I read the one instruction on aiding and abetting. When you turn the page, which is instruction 20 or at the appendix, page 33, when they talked about, again, the 924C, a defendant can facilitate the use or carrying of a firearm, no mention of brandish in the commission of a violent crime in numerous ways, and then they say things like transporting the principal offender and the firearm to and from the scene, encouraging others to use a gun in the commission of the offense. The instructions set this up for a use or carry but did not. I don't know how you can say that because the word brandish appears in the verdict, along with use or carry, and the case law is very clear, you can't assume that the jury found one of those prongs and not another. For that reason, I'd ask that the sentence be vacated. Thank you. All right. Thank you. Our thanks to both counsel. The case is taken under advisement. And Ms. Jacobs, you were appointed on this case. All right. The court thanks you for your assistance to your client and the court.